Your Honors, my name is Elizabeth Garfinkel and I represent Appellant Lupe Mercado and I'd like to reserve let's say three minutes for rebuttal. Each of the counts pursued by the government required Ms. Mercado's precise knowledge that she was assisting a specific person whom she knew was substantially motivated to kill her position in a racketeering enterprise. She was acquitted of the counts whose jury instructions included this specific knowledge element and she was only convicted of the count that had erroneously omitted that element. The government has not met its burden on appeal to prove this omission of the element did not contribute to the verdict. Indeed at trial the government failed to present a sufficient evidentiary foundation establishing Section 3's mens rea or even its actus reus under this court's precedent. This total failure of proof of these essential elements requires dismissal of Ms. Mercado's only remaining conviction. But I just want to be clear you talk about elements. I thought that what your argument was focused on was the motivation of the person she was allegedly aiding and abetting to kill whether that was to further his position in a in an organized in a in a you know in an organized family or not. In a racketeering enterprise your honor? Simply as a favor to to uh Lupe. So your honor the element the knowledge element for Section 3 is uh that she knows that she is assisting a specific person who uh committed a federal offense and it has been established by uh several several precedents including banks that an element of that offense is the knowledge of the vicar purpose. And that vicar purpose has to be um to aid the racketeering. So the member of the um she has to know that someone is a member of the organization and that that person committed um sorry and that person was substantially motivated to uh maintain his position in the enterprise and that the killing was committed for that purpose. And does she have to know it may be a subtle question that it was also a federal offense? It has to be a crime against the United States and so yes that is a federal offense and we have graves where uh uh the distinction is whether or not um she whether or not the friend knew he was uh assisting someone who was a who was a felon in possession as opposed to just unlawful possession. But that's because of the elements of the federal defense she doesn't need to know that it is a federal federal offense. Correct your honor. So here not only is there no evidence that uh they had a substantial vicar purpose that any of the killers had a substantial vicar purpose for killing Calvin Sneed for killing Ms. Mercado's daughter's pimp. But there is of and then of course there's no evidence that she would know about that. The most the government points to is people talk but that's not that is not uh has ever been uh sufficient to uh to substantiate knowledge in in these court this court's decisions. So could I ask um say we agree with you about the jury instructions so we think that this does need to be reversed. I think you still have this substantial evidence argument that we need to decide because of double jeopardy is that right? Uh yes your honor and also to dismiss the conviction. But we would dismiss well that's the same thing right the point is it permanently dismissed it can't be retried if you win on substantial evidence. Exactly your honor. So um can you speak to that part how the jury um had no basis to infer say that Antonio was doing this for a vicar purpose? Yes your honor um so there there's nothing to show that um Antonio so there's nothing to show that in 2012 Antonio had any concern with uh CDP. He uh was last involved with CDP seven years prior. He had been living in Los Angeles pursuing an acting career. There's no evidence that he um that anyone in CDP thought that prostitution was the kind that pimping somebody was the kind of uh was so exploitative that it required a violent response. Um the things that the government points to these are really these like media stereotypes uh entertainment tropes of any disrespect requires violence that's just not in the record. Uh we have a few incidents of actual murders requiring violent retaliation but nothing about another person's pimping a family member would require that sort of a response. So so uh I discussed in the reply brief the Gardner case which I think is very helpful in explaining how simply creating a framework is insufficient. Uh there needs to be a substantial foundation in evidence something in the evidence that actually supports uh this purpose and not only is that lacking but there's nothing showing that she would have heard that. There needs to be something in the evidence showing that she could have heard about that not just that you know I'm that that you know it would be presumed that because Antonio called her mom she he must have told her oh man I really want to get back in the gang and that's really important to me. I mean that's just not there. Um the great sorry this is jumping this is jumping a little bit I realized to the co-defendant but I mean if the jury was right about the Rico conviction in the other in the other case then is that does that suggest that there would be enough evidence to retry your client for the Vicar purpose? No your honor because again um there needs to be evidence of her knowledge that anyone had that she was assisting. It's important to to note that she had to she had to be assisting the the person who had that purpose like she had to know that the person she was assisting had that purpose. That's another thing that was left out of the instruction by the way. I mean it made the instruction made it look like she could just assist Barry without knowing whether he had that purpose. So Barry did have that purpose given that they're a I mean could you not infer that whatever Barry was helping then she is also knowledge has knowledge of helping the same thing? Your honor I think you can't infer anything other than that they both wanted to protect their daughter. That uh whether she had any knowledge that Barry wanted to maintain his position in the enterprise. Oh and this might be important to help there is a I have not briefed I haven't really spent much time on and the Vicar purpose. I mean they're distinct there's distinct standards and the Vicar purpose is you know it's a violent crime in aid of racketeering. So it has to be and it has to be committed by someone with a substantial purpose of maintaining their position in in that offense. So there's no indication that she was that she knew any of the people she was assisting let alone Barry Gilton who you know was employed with the Boys and Girls Club you know that he had any interest in um promoting his position in CDP. That she even knew it was a racketeering enterprise but that you know affecting interstate commerce you know that it's not uh it's just not in the evidence. Well the jury could infer that there was a gang that was a racketeering enterprise here right? That goes too far I think to say that they couldn't assume there was a racketeering enterprise somewhere in the background here. She might have known that I mean there's no evidence that she knows anything about Antonio and Alfonso or Barry's violent activities outside the night in question. Well she might not know that's fair but just the idea that there is CDP and that it's a racketeering enterprise that is something the jury would have to be able to infer. Whether these other people are connected to it or did the murder because of it that's a different question but just it sounded like you were saying she doesn't even know there's a racketeering enterprise anywhere. Whether or not she knows of the existence of CDP as a racketeering enterprise that is not clear in the record. That does not there's nothing that says that she would. I mean there's um she attended the funeral of uh of a along with hundreds of other people of a of Julius Hughes who was killed um and he was also a member of the boys and girls club where her husband her partner worked. Um there's but but isn't it I mean wasn't part of this that there was this huge prosecution of all these crimes of this CDP. I mean CDP is a major gang in the neighborhood as I understand and she lives in the neighborhood and she's basically in a family with some of these people. I mean the idea that she doesn't know that there's a gang sounds like that is stretching what we could infer. Your honor if you if I may if you if you look at the evidence the evidence that was presented you know this is the the government prosecuted a gang. Uh JB the informant talked about what it was like to be in that gang. Uh he was a young man um around Antonio's age and they um he talked about you know his experiences and his associations with um the house that belonged to Gilton's family but that they weren't living in. They talked about um Grove Street as a headquarters but that was also a grand mommy William's house and another witness talked about how that was just a grandmother's house and it was a polling place as well. I mean Ms. Mercado is never placed anywhere where she would have heard um specifically information about CDP. Like that's not that's not there. It's not like the gun in Burnett that she had an opportunity to see but I will say this just knowing that a gang exists that can't be enough because that would put everyone in the Fillmore community uh assuming a vicar purpose motivation to anyone in the community and the specific knowledge element um is much more specific than that. It's not that the not that the gang exists but that Alfonso or Antonio or Barry had the purpose of maintaining their position in it and she was assisting one of those individuals. Oh and we also haven't even gotten to like Prescott and just um it would be this court would be overruling its precedent in those cases that said statements to the police are not enough. I do want to make sure I have time for rebuttal but I also want to answer questions so. Judge Corman? I'm sorry I want to make sure I answer all of your questions. I was not talking to you I'm sorry I was just asking Judge Corman do you have any for defense counsel? I just was I had a question about the jury instruction. It seemed to me that um the lawyers it's true that when the judge specifically charged this charge as I understand it um that he did not require a vicar purpose but the lawyers told the jury both the prosecution and the defense argued that it did and earlier he on on on NER 33 when he gave a supplemental instruction to the jury the jury he correctly instructed the that um the the defect in the original instructions was harmless. Mr. Edwards there are several reasons why uh the first being that uh this court's precedent have continually said that uh oral pronouncements cannot override the written instructions so that's one. Second the um what the jury specifically asked what is the difference between murder and murder and aid of racketeering and that um was for count two and the court said that they had to find murder and aid of racketeering um for count two the jury was left with the instruction for count five which only said simple murder so it absolutely confirmed when they asked what's the difference between murder and murder and racketeering it appeared to be distinguishing count two from count five and again the instruction for count five pointed to the definition of murder in count one finally this is all Chapman Chapman the government has the burden to prove that it did not contribute to the verdict when you have the omission of a requisite element from an instruction pointing to another definition that does not apply I mean it it there uh it absolutely might have impacted the jury so it completely uh satisfies Chapman but the jury in response to the jury note that the jury sent out that what's the difference between the charge of murder and the charge of murder and aid of racketeering as I understand that the judge gave the following instruction the law regarding aiding and abetting is stated in the jury instruction 40 an answer to your specific question in order to find the defendant guilty of murder and aid of racketeering on aiding and abetting theory the aid and abetter would have to know that a substantial purpose for for the person who committed the murder was a was and I'll skip all the others for the purpose of pdp so in addition to each of the lawyers arguing to the jury that that was required and I'm not unsupplied I don't you think I'm unsympathetic to your principal argument but I am troubled by the fact that when he this charge seems to me combined with the fact that the two lawyers argued to the jury that this mental element that we're talking about right now in terms of what she had to know was the motive for the killing seems to me to render the charge the defect and the charge harmless and that's the question that I have your honor to clarify that question and that response was directed for count two which is aiding and abetting that was count two count five which was assisting after the fact that was never corrected and that said murder they were never instructed that for count five there had to be a vicar purpose if you look at the instruction for count five on on page 93 of the excerpts of record that's what the jury got they received no clarification other than the oral arguments of counsel which are not enough it's a very confusing it's a very confusing standard the jury asked many questions about the standard which was count two count five's instruction specifically moved them away from that standard and pointed to count one which was just simple murder so that's the distinction the actual the only count that she was convicted on was the one where they were not instructed on that verdict I have never seen such a clear evidence in support of the harmfulness of an instructional error okay did I answer the question your honor good thank you very much great and we'll we'll give you time for rebuttal appreciate that thank you sure okay let's hear from the government now good morning and may it please the court Matthew Yelovich on behalf of the United States I'd like to pick up where the court just left off which is on the jury instruction although I'm happy to answer questions otherwise the instruction as a whole and in failed to adequately guide the jury's deliberation and that's because the district court in this case repeatedly linked the instruction for count five accessory after the fact to the instruction for count two which had the vicar purpose element in it I would refer the court to excerpts of record 2192 where the court in the introductory remarks to the substantive instructions says count five is accessory Lupe Mercado is charged in count five with being an accessory to the murder of Calvin Sneed which is charged in count two immediately before that on 2191 and 2192 the court had already instructed that count two was murder or native racketeering during the count two instruction the court of course instructs the jury that the jury needs to find a vicar motive for Sneed's killing that's at excerpts of record 2216 and then after the count five instruction the accessory after the fact instruction the court links the verdict form to between count five and count two and this is at excerpts of record 2226 where the court says that the jury in order to find the defendant guilty the jury must find that Lupe Mercado quote knowing that offenses against the United States had been committed namely murder as charged in count two so from that record again under this court's case law United States versus Dixon cited in the government's answering brief at page 50 we look at jury instructions as a whole and in context and we don't isolate a single instruction and on on the whole it's clear that the court is repeatedly linking the accessory after the fact instruction to the substantive offense that Lupe Mercado needed to know about and in the substantive offense it lists the vicar purpose just uh you know it's hard to accept about that line of argument is that the the reference to count one and the instructions on on the yeah I would explain that the reference to count one as explaining what murder is not what Lupe Mercado needed to know about this particular murder but but what it is that a murder involves and I think the generic definition of murder um makes sense because the jury needs to know what action what actus reus is involved but as to what Lupe Mercado needed to know about the murderer's purpose I think that's clearly spelled out in count two and on the on the instructions as a whole is repeatedly referred to in terms of what the accessory after the fact instruction refers back to as to what elements she needed to know so how do you explain the the note then that uh as to the liberations on count two so the the note is actually very specific um I know that my friend uh wants to focus on one part of it where they ask about what is the difference between murder and murder native racketeering but if you look at the note this jury was very careful um this is at excerpt 32 where the the jury said that this note is is related to the first note regarding the third method identified in note one and and the jury's question is what is the aider and abettor's purpose in acting um what as because Lupe Mercado recall is charged as an aider and better of the substantive by car murder so the question is what does she need to have as a abetting this offense does she need to personally want to increase her standing in the gang does she need to want to increase the standing or maintain the standing of the murderers in aiding and abetting or is it enough that she ate in a bet the murder of Calvin Sneed and I think that the the jury's notice is quite detailed and specific on that point and this is not a jury that didn't know how to ask questions I mean the jury notes are are clear they're detailed they um they they are very specific as to what instruction they're asking about none of that is relevant as to count five because for count five there's no question that she did not have to have a vicar purpose she just needed to know that someone anyone committing the murder had a vicar purpose in order to be guilty well I'm sorry I don't know go go ahead I'm just troubled by that it seems to me that the purpose of this killing was revenge against Sneed for what he had done to the daughter of Lupe and her and her partner and it seems to me that your argument is is that if she knew that he was a member of this enterprise that that's enough I don't is any murder committed by someone who's a member of an enterprise is that automatically make it a a killing in furtherance of it of his in furtherance of a desire to increase his position or place in the enterprise no your honor not any murder but a murder in response to disrespect to a core cdp family where the murderers uh are operating and again it's a core family that's not not a member of the of the whatever you call it c c p d um uh or b uh just because that's that alone is enough no your honor and what you have here is compelling evidence that both Lupe and her partner or husband desired revenge for what the the Sneed had done to their daughter you know in my view that was the reason for this killing and that the person who did it was doing it as essentially as a favor and not to enhance any position within a within a criminal enterprise and I'm quite frankly troubled that that um by by the nature of your theory I mean first of all this was a plain out and out state crime that in my view didn't even belong in federal court but then you take it and you put it into this Rico enterprise and therefore just because he was a member of the enterprise the murder and they have some tangential relationship to the enterprise the murder was done not for the most obvious reason but for a reason uh that is not entirely clear so so there's a lot to unpack there your honor if I could have a moment to respond there are a few points I would make the first is yes obviously it's it's one rational view of the which is uh that this was a personally motivated murder by Barry Gilton and Lupe Mercado that's not the only uh rational view of the evidence as to why the CDP actors acted because on this record you have an a member of CDP testifying that CDP members were expected to say yes to shooting that their rank was downgraded when they refused to shoot that they had to maintain a reputation for event when they're you this is not clear to me that there was any order given to shoot I mean so so on that specific point very it's it's this whole thing your whole theory is is is very troubling to me um um you can see that the reason that they wanted him dead was because of what what uh Snead had done to their daughter and so they go to him and and to the I forget which Antonio or the other person and they ask him to do it and then from that they go to ask him to do it and from that you assume that they knew that the reason he was doing it was to enhance his position in the enterprise when there's not even any evidence that anybody ordered him to do it any superior asked him to do it or that he even needed to do it respectfully your honor I think there is definitely record evidence on those points and and I'd like to uh direct your honor to excerpts of record um and and I apologize I have the excerpts of record for the Barry Gilton excerpts but I can get you um I can get you the transcript but it's excerpts of record 764 in the Barry Gilton excerpts of record shows that Alfonso Williams one of the two murderers with or one of the three murderers excuse me was a shot caller in the gang a very very powerful member of the gang there's also evidence in the record that Antonio Gilton one of the three shooters had pre had personally had his rank downgraded in the gang on a previous occasion when he refused to shoot um and that's an excerpt of record 575 to 576 that must have been a very long time ago though right because he had been living in LA for six years or so your your honor he had been living in LA although there's again uh looking at the evidence in the light most favorable to the government and with all reasonable inferences drawn in the verdict's favor you have testimony in the record from the gang cooperator that um he had seen Antonio Gilton in the neighborhood after the move to LA and then the next question is so in your view was Antonio Gilton a member of CDP the cooperator says yes then after that there's testimony that Antonio Gilton when he's arrested is arrested at gang headquarters with what the cooperator called gang headquarters with two CDP members um that's at the trial transcript 916 um and uh uh there's also the fact that he's shot outside of gang headquarters a few weeks after the murder of Calvin Sneed um and that's an excerpt of record 835 so you have you have a evidence in the record that Antonio I did not hear who was shot Antonio Gilton was shot outside of gang headquarters several weeks after the murder of Calvin Sneed which I think I'll probably get to more in the Barry Gilton argument as to why um that shows a fear of reprisal for the Calvin Sneed murder but my point in mentioning it here is a rational juror could have found that Antonio Gilton was very much still a member of CDP there's testimony from the cooperator who says that participate in CDP as members so viewing that testimony in the light most favorable to the government and with all reasonable inferences drawn in the government's favor I think a rational juror could conclude Antonio Gilton is still a member of CDP when he commits this murder with the shot caller from CDP Alfonso Williams and he is all of that and Lupe knew all of that your honor there's not direct evidence that Lupe uh was aware that Alfonso Williams was the Antonio Gilton had his rank downgraded but but let me just respond on what a rational juror could have inferred from the evidence because I think there are three categories of evidence that a rational juror could have looked to to understand Lupe Mercado's knowledge um the first is the evidence that I've already discussed about what CDP was what their mo was in terms of uh beside the point I understand that the question is what do you know about his motive and the color and the circumstantial evidence that you just referred to so what was what you didn't know that he was a I forget a gangbanger or whatever the term uh the term you use but how what what do we know that she knew that would would tell us that she was aware that the reason for this revenge killing at her presumably possibly at her or her partner's request was done to enhance his position in the enterprise so a few points on that your honor the first is she is in direct contact with Antonio Gilton in the two days before the murder that's an excerpt of record 17 that doesn't prove that she knew that that just goes to show that she she wanted him to commit the murder because because of the because of what Snead had done to her daughter that is one rational view of the one and if you look at United States versus Burnett cited in the government's brief at pages 27 and 50 in that case there was no direct evidence that the defendant had observed the gun in being an accessory after the fact to armed robbery but this court said well she had the key to the motel room where the gun was eventually seized and therefore she would have been in a position to know that there was an armed robbery she may have also been in the getaway vehicle there wasn't direct evidence on that and I don't dispute that you could show this by circumstantial evidence I just don't see it here well there's an incredible evidence that the direct evidence is so overwhelming as to the motive for this killing and why she wanted him dead again your honor that that makes sense given the jury's verdict right the jury acquitted her of having a vicar purpose herself but it doesn't mean that she didn't know that a substantial purpose of someone who she was so close to who called her mom who lived with her for a time who she sent her daughter to live with and who she was in close touch with in the days leading up to the murder that that she would not have been in a position to know that he personally had had his rank downgraded by refusing to shoot in the past and who then she approached to shoot uh in this he had his rank reduced and how would she have assumed that this would have increased his rank when when it was being done purely as a favor to her so again your honor I think that's one rational view of the evidence I just don't think it's the only one I think another rational view of the evidence is this is a dominant family within cdp the gang it's a and cdp members are expected to do what the giltons ask of them that's testimony from the cooperator and this is someone from the giltons asking them to to kill someone so operator said that they were expected to do what the giltons asked of them yes the cooperator said that if a gilton asked a cdp member to do something they would do it that's the testimony I understand that and she and she but she asked him to do it not to increase his position in the of the what he had done to her daughter you know I'm just I have to say as a pure matter of policy I'm I'm concerned about the the extent to which this this your argument is being used and where it could go in terms of of anybody being drawn into this by under circumstances such as this why wasn't this simply a state prosecution you're right I see I'm over my time may I answer Judge Corman I have a few questions too so you're going to be here a little bit longer that's fine um so so Judge Corman in answer to your question um the record uh is um silent as to why the state uh why the the state ultimately dismissed their charges but what I would say is that the evidence is quite strong that Lupe Mercado and Barry Gilton were again viewing it most favorably the government were quote basically a part of cdp that's the testimony from the gang cooperator so they said they were a part of it basically a part of cdp that's the direct quote and so the question the question is you know viewing that in the light most favorable the government this is not someone who's being swept up from the periphery this is someone who lives in a house that gives the gang part of its name okay so it's part of it that still doesn't live in that house isn't it a different house different family house she she moves out of that house and moves down to 35 jennings court but the but 1458 grove is the grandmommy house grandmommy house and this house is the the house that barry gilton lived in is was on central barry gilton and lupe that wasn't my understanding but it's a minor point um i i'm sorry judge wofford and i know that you had some questions yeah i just wanted to see judge gorman did you have further questions no i know okay let me just be real technical for a second um the three participants in the murder as i understand it um this defendant only helped her actions only helped two of them is that right antonio and and her partner she didn't help nothing she did help williams right so he's out he can't whatever we're going to predicate this charge on it can't be anything that she knew about his actions is that fair i don't think that's right your honor i um i think that she could be an accessory after the fact to any of the three of them and she has to do something though that helps the principal and she didn't none of her actions did anything whatsoever as i understand it to help williams that's what i'm trying to get clarity on from you is that right so she she deactivates her phone the day after the murder on june 5th um and and thereby destroys phone evidence that's at excerpts of record 13 29 to 13 30 he was in contact on her phone with williams you're saying no so your honor that is not in the record right just that on that same day alfonso williams destroyed right so but there's no way a rational jury could infer that the two of them this defendant and williams had somehow coordinated their evidence destruction efforts right there's nothing in the record to suggest yeah okay so williams is out i think that's a fair statement and is it also fair then that barry gilton is out on the same rationale that our district court judge here um used to um when when uh when ruling on the the sufficiency challenge because he was acquitted of course of the so he he's acquitted of acting with a vicar purpose as a technical matter your honor i don't think that precludes us from maintaining the accessory after the fact charge to uh her assisting him in committing vicar murder even though the jury did not uh find that um i think that the the question is whether there's sufficient evidence on the accessory charge um again viewing the evidence in in the light most that barry gilton acted with a vicar purpose but i take your honor's point and i i do think the evidence is strong on antonio gilton okay so that's why it really does come down come down to antonio and and that's where i guess i i share judge corman's view of this is that because there was a family relationship it had nothing to do with the gang antonio is the cousin of miss mercado's and so i i guess i just don't see how a rational jury could say okay well presumably it was barry who made the request to antonio to to help out goes to a family member a cousin for something incredibly personal has nothing whatsoever to do with the gang it's not like sneed is some rival gang member there in san francisco who's poaching on cdb's territory there's nothing to her partner goes to a family member to ask for help and i guess i am at a loss to see how in terms of the mens rea that that miss mercado would have to have that she would know that the reason antonio agrees to help in this personal family matter had anything whatsoever to do with maintaining or improving his standing within cdp that just makes no sense to me whatsoever so i just wanted to give you another crack at explaining why as to antonio specifically you think a rational jury could draw that inference about her knowledge of his motivation i appreciate the opportunity your honor i'm sorry i didn't mean to interrupt um so i i think what i would say is starting with the case law with banks the the motive that antonio needed to have is just a substantial purpose not the only purpose so the reason he commits this murder can be a mixed motive it can be you know he's personally allied with gilton and mercado he's strongly about latisha and he knows that he he is still a cdp member and he wants to maintain his position those are not exclusive what is your definition of substantial wasn't this gradual motive the the desire to to uh effectuate a request to for to carry out retribution your honor i'm not sure that that's exclusive of the gang purpose either substantial motives had to be a substantial motive to increase or maintain his place in the enterprise i don't see that there was a substantial motive i don't know how you define that term the substantial motive here was retribution as a favor to a friend or a relative for that matter i don't know how are you defining substantial so in banks this court used a substantial motive to mean it doesn't need be the sole motive um now i understand your courts uh the court's question and what i would say is you know again could any rational juror view this as someone who is acting solely for personal motivation of course but we have to assume the evidence in the light most favorable the government and all reasonable inferences in the government's favor in this stage let's assume for argument's sake for the moment that we accept that it was a dual motive but you you had said that it had to be if it were dual it had to be the preserving his place or enlarging had to be a substantial one and the stool hardly established that it's substantial or that she knew it no but under this court's case law substantial can can be can coexist with other motives i mean in banks i know but but i'm still asking for what your definition is of substantial you're just saying because there's two motives we've said it's okay but but you you what is what is what makes this a substantial motive and and what indicates that she was aware of it i think the quite i think that the response i would give your honor is what inferences could a jury draw from this evidence and the inferences a jury could draw from the evidence are that antonio gilton had previously had his gun taken away by the gang when he refused to shoot and here he is approached to shoot and he says yes now one view of that evidence is well he only could have said yes because he was related to the giltons and wished to help a family friend another view of that evidence is he was substantially motivated to maintain his position in the gang particularly because alfonso williams the shot caller in the gang and a very powerful figure in the gang is in the car when they're pulling the trigger so whether antonio gilton would have done this on his own if asked by barry gilton is certainly a a question um that defense counsel can argue i think my point is just that a rational juror could view the circumstances of this murder and say antonio antonio gilton having previously had his rank decreased now approached to shoot again with a shot caller and leader of the gang in the car when he pulls the trigger or when he's a part of this murder does he do so with a substantial motivation to maintain his rank in cdp and i think a rational juror could have said yes to that and as to his relationship i'm sorry that she knew that is for example that his that his rank had been uh that had been lowered i i think given the closeness of their relationship and their communications in the days leading up to the murder i think it's a fair inference for a rational juror to say she was in a prime position to know what his motivations were and that one of motivations could have been a substantial purpose to commit the murder uh to maintain his position in the gang excuse me your honor okay and i see i'm well over my time i'm sorry your honor that's just one more question uh if we reverse this conviction because of the instructional error are you going to retry lupe your honor i think that would be the government's uh intent but i i can't speak to that i i don't i don't know the answer to that question i can certainly file something uh supplemental because the only purpose of us reaching the sufficiency is so that you could retry her right if we do reverse the conviction yes so if you're not going to it would be helpful to know because we wouldn't have to do this i i think it would be our intent to retry uh lupe mercado if the jury instruction was proven to be erroneous your honor i just don't it's hard for me to answer that question on the spot but i certainly can find out an answer and get it to you how has she been incarcerated during that this whole period since it's a conviction she got time served as a sentence your honor so she's out of custody she she i didn't hear what you said she her sentence was time served so she's she's out of custody and you're going to prosecute her anyway i i mean i think if we you know we don't always pursue prosecutions uh just in order for for the sentence your honor but um but i take your honor's point okay uh thank you for uh suffering through our barrage of questions we appreciate it you've done uh outline you have double duty so you're not even done yet boy it's a long morning uh okay let's put uh that's a maybe a perfect amount of time you can just count down from there and we'll hear from you oh no i can't do it that way that's fine two minutes for rebuttal um please thank you honor uh quickly at some points um i just want to point to the um argument the reply brief discussing each of the government's cases regarding uh the instructional error uh the oral instructions are never sufficient with uh the compared to the written instructions um and uh i wanted to point out rodriguez which is a very recent case which had a similar um error so i discussed those in the reply brief um i also want to emphasize that from um from the first issue the actus reus is um you know it would be important to uphold this court's prior authority on this issue that it really is insufficient to just have um statements to the law enforcement um and the premise behind that is that section three should not simply criminalize anything less than enthusiastic cooperation with investigating authorities that was in lepanto so i think that's important to keep in mind i think lepanto was a 10th circuit case exactly yeah but it's so red it's so red miller i think and that goes to the issue i mean the the ninth circuit cases that you rely on involve a different statute which and which any reference to um section three is arguably dicta but the way the ninth the 10th circuit may have construed it in a way that it wasn't just sort of a kind of a idle passing thoughtless reference um i i do think that it's it's it's very hard to hang conviction on that those statements the um and i discussed those in the briefs um the uh the house on central avenue belonged to his family there was no evidence that they lived there at any time that lupe mercado ever lived there um and antonio uh there's nothing even saying his rank was lowered uh just that his gun was taken away there was no evidence that he cared about that um and finally um i i do urge to address this overreach of the government in this situation i do think it is important to be addressed and um to not permit uh them to um to not permit them to be inferring a viker motive simply because people are family members or live in the community um okay thank you can i ask one quick question that you'll know that was your client already in trial in state court on murder charges when this all happened yes your honor i mean it's not part of the um issues being raised on uh addressed on appeal but however yes she was the her the trial was a month away i believe when it was when the indictment was filed i see okay it was upcoming but it hadn't yet i'm sorry i didn't was it the same case that she was on trial yes yes it was for that case and uh it was a month beforehand and um and i was not the trial attorney so you know i'm the appellate attorney but that's what i know i mean i just want to be clear it arose out of the same yes yes yes yeah and she's on probation now so um it is still on an ongoing impact on her life yeah okay no i'm not that it's moved yeah all right thank you thank you very much um thank you your honors we will uh here
judges: WATFORD, FRIEDLAND, Korman